REVISED 08/19/2026

# United States Court of Appeals for the Fifth Circuit

No. 25-60410

United States Court of Appeals
Fifth Circuit
**FILED**
August 18, 2026
Lyle W. Cayce
Clerk

Evgenii Zhuravlev,

*Petitioner*,

*versus*

Todd Wallace Blanche, *U.S. Attorney General*,

*Respondent*.

Appeal from the Board of Immigration Appeals
Agency No. A241 328 243

Before Stewart, Graves, and Wilson, *Circuit Judges*.

Per Curiam:*

Petitioner Evgenii Zhuravlev is a gay Russian citizen who applied for asylum and withholding of removal under the Convention Against Torture ("CAT"). The immigration judge (the "IJ") denied relief. The IJ concluded that Zhuravlev failed to establish past persecution or a well-founded fear of future persecution, and failed to establish he was more likely than not to be tortured if he returned to Russia. The Board of Immigration Appeals (the "BIA") affirmed the IJ's decision, and Zhuravlev

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

filed a petition for review. For the following reasons, Zhuravlev's petition for review is DENIED.

## I.

In June 2024, Zhuravlev applied for admission to the United States without possessing a valid entry document. After the Department of Homeland Security charged Zhuravlev with not possessing a valid entry document under 8 U.S.C. § 1182(a)(7)(A)(i)(I), Zhuravlev conceded removability. However, he applied for asylum and withholding of removal under the CAT. In his application, Zhuravlev claimed that he suffered past harm, that he would suffer future harm, and that he would be tortured by state actors for being a gay man in Russia.

In support of his application, Zhuravlev shared personal experiences of his time living in Russia. In high school and college, he and his friends were bullied for being gay. In 2012, his employer slapped him and demanded that he resign when he found out that Zhuravlev was using work computers to access gay dating websites. When Zhuravlev attempted to file a police report, his employer threatened to withhold his pay and a reference letter for future employers. In 2019, Zhuravlev and his friends were assaulted by men outside of a gay club. Zhuravlev also received threatening text messages and phone calls from a co-worker's husband after the co-worker disclosed that Zhuravlev was gay.

In 2019, Zhuravlev met his current husband, Egor Safronov, and began cohabitating with him. The two traveled across Europe between 2019 and 2022, visiting Estonia, Finland, Sweden, the Netherlands, and France.[1]

---

[1] Prior to meeting his husband, Zhuravlev had also taken trips to Turkey in 2014 and 2015, and to Vietnam in 2018.

And when Safronov received a draft notice for the Russian military, they left the country for about one month until the notice expired. Zhuravlev conceded that he did not face difficulty traveling to and from Russia during his travels across Europe.

In 2022, Russia passed an anti-LGBTQ propaganda law which criminalized queer expression. Although Zhuravlev stated that a gay person could face a ten-year prison sentence, he could not cite specific record evidence to support that assertion. Nevertheless, Zhuravlev stated that, because of this law, he would undergo mandatory conversion therapy and face other persecution. While he did not point to evidence showing that he would be subject to conversion therapy or other persecution in Russia, he recounted the story of another young individual who had been subjected to mandatory conversion therapy, stated that gay nightclubs were being raided, and asserted that gay people were facing criminal prosecution.

In 2023, Zhuravlev and Safronov left Russia once more, citing the war in Ukraine as the reason. Zhuravlev admitted that they were not confronted by Russian officials for being gay when traveling. He also stated that they were not subject to systemic mistreatment. The two waited months after Safronov received his draft notice and the propaganda law was passed to leave Russia, because they did not want to leave their family. The pair subsequently entered the United States together in June 2024, and Zhuravlev applied for asylum, withholding of removal, and protection under the CAT.

On February 7, 2025, the IJ denied his application, holding that Zhuravlev failed to establish past persecution or a well-founded fear of future persecution, and failed to establish that he was more likely than not to be tortured if he returned to Russia. Zhuravlev appealed. The BIA affirmed the IJ in full. It reasoned that Zhuravlev traveled freely to and from Russia with his spouse for four years without issues, freely entered and exited Russia, and

delayed leaving Russia for ten months after the propaganda law passed. It also deemed Zhuravlev's anecdotal evidence unconvincing. Zhuravlev filed a petition for review of the BIA's decision.

## II.

We review the BIA's legal conclusions de novo and its factual findings for substantial evidence. *Rubio v. Bondi*, 147 F.4th 568, 575–76 (5th Cir. 2025). "Under this deferential standard, we will not grant [a noncitizen]'s petition unless the evidence 'compels' a contrary conclusion to the factual determinations reached by the [IJ]." *Id.* at 575 (quoting *Zhao v. Gonzales*, 404 F.3d 295, 306 (5th Cir. 2005)). Accordingly, the petitioner "must show 'that the evidence is so compelling that no reasonable factfinder could reach a contrary conclusion.'" *Id.* at 575–76 (quoting *Bertrand v. Garland*, 36 F.4th 627, 631 (5th Cir. 2022)).

## III.

### A.

To establish eligibility for asylum, an applicant must show that he is a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42). A "refugee" is a person who is unable to return to his country "because of [past] persecution or a well-founded fear of [future] persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Persecution is "harm inflicted either by the government or by private actors whom the government 'is unable or unwilling to control.'" *Bertrand*, 36 F.4th at 631 (quoting *Sanchez-Amador v. Garland*, 30 F.4th 529, 533 (5th Cir. 2022)).

To establish past persecution, an applicant must show a "harm inflicted on the [noncitizen] on account of a statutorily enumerated ground by the government or forces that a government is unable or unwilling to

control." *Nikpay v. Barr*, 838 F. App'x 30, 32–33 (5th Cir. 2020) (per curiam) (citation omitted). "A showing of past persecution entitles [a noncitizen] to a presumption of future persecution." *Id.* at 33 (citing 8 C.F.R. § 208.16(b)(1)(i)). Barring this presumption, however, an applicant must show that "a reasonable person in the same circumstances would fear persecution if deported." *Id.* (citation omitted); 8 C.F.R. § 1208.13(b)(2); *see also Rubio*, 147 F.4th at 579.

Here, Zhuravlev does not provide sufficient evidence to compel a contrary conclusion to that reached by the BIA, that Zhuravlev failed to establish that he suffered past persecution. Specifically, he cannot show that he experienced systematic harm demonstrating a "pattern of sustained pursuit" or a "regular and methodical targeting." *See Gjetani v. Barr*, 968 F.3d 393, 398 (5th Cir. 2020). At best, Zhuravlev demonstrates irregular instances of harassment and bullying that do not rise to the "extreme" level of persecution. *See Qorane v. Barr*, 919 F.3d 904, 909 (5th Cir. 2019); *Gjetani*, 968 F.3d at 398. Zhuravlev likewise failed to provide sufficient evidence to show a well-founded fear of future persecution. *See Qorane*, 919 F.3d at 909; *Gjetani*, 968 F.3d at 398.

The BIA and the IJ acknowledged that their respective holdings were brief, but they nevertheless considered Zhuravlev's argument that Russia has a "pattern and practice" of harming LGBTQ+ people. They then each determined that anecdotal evidence and mere "concerns" were insufficient to show past persecution or a well-founded fear of future prosecution. Thus, substantial evidence supports the BIA's denial of asylum.

**B.**

To obtain protection under the CAT, an applicant must show "that it is more likely than not that he . . . would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). "Torture is an

extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 1208.18(a)(2). Such torture must be "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). The standard for establishing entitlement to withholding of removal is more stringent than the standard for asylum. *See Dayo v. Holder*, 687 F.3d 653, 658–59 (5th Cir. 2012).

Here, Zhuravlev does not provide sufficient record evidence to show that he is entitled to protection under the CAT. Specifically, because Zhuravlev fails to show past or future persecution for reasons stated above, and instead proffers anecdotal evidence and instances of intolerance from individuals, he cannot demonstrate that he would be tortured if he returned to Russia. *See* 8 C.F.R. § 1208.18(a)(2). Thus, substantial evidence supports the BIA's denial of withholding of removal under the CAT.

**IV.**

For the foregoing reasons, Zhuravlev's petition for review is DENIED.

James E. Graves, Jr., *Circuit Judge*, dissenting:

I agree with the majority that substantial evidence exists for the BIA's conclusions that Zhuravlev did not establish past persecution and that he is not entitled to relief under CAT. However, the BIA and IJ failed to adequately address critical evidence related to Zhuravlev's fear of future persecution, so I would grant the petition for review and remand to the agency for future consideration.

"To establish a well-founded fear of persecution, an alien must have a subjective fear of persecution, and that fear must be objectively reasonable." *Rubio v. Bondi*, 147 F.4th 568, 579 (5th Cir. 2025) (citation modified). Zhuravlev has stated that he subjectively fears returning to Russia, and the Government does not contest this.

To demonstrate that his fear is objectively reasonable, Zhuravlev must show that he would either be singled out for persecution or that Russia has a pattern or practice of persecuting those similarly situated to him. *Zhao v. Gonzales*, 404 F.3d 295, 307 (5th Cir. 2005). To be objectively reasonable, he need not show that it is more likely than not that he would be persecuted, only that there is a reasonable possibility of persecution. *Qorane*, 919 F.3d at 910 n.2. Indeed, "[t]here is little reason to generally suppose that a government's past actions in this respect create an 'outer limit' on its future actions." *Abdel-Masieh v. U.S. Immigr. & Naturalization Serv.*, 73 F.3d 579, 584 (5th Cir. 1996).

While we review the BIA's decisions for substantial evidence, those decisions are "deficient if [they] fail[] to reflect meaningful consideration" of the petitioner's evidence. *Mejia-Alvarenga v. Garland*, 95 F.4th 319, 324 (5th Cir. 2024) (citation modified). Thus, it is well-established in our caselaw that the BIA "abuses its discretion when it fails to provide a reasoned explanation for its decision, ignores or fails to fully address important aspects

of an individual's claim, or fails to meaningfully consider relevant evidence." *Prado-Majano v. Blanche*, 176 F.4th 335, 342 (5th Cir. 2026) (citation modified); *Sylejmani v. Sessions*, 729 F. App'x 317, 320 (5th Cir. 2018) (per curiam); *Kassomi v. Garland*, No. 22-60336, 2023 WL 4992824, at *2 (5th Cir. Aug. 4, 2023) (per curiam).

Here, the IJ and BIA failed to meaningfully address evidence offered by Zhuravlev critical to deciding whether he had an objectively reasonable fear of future persecution. The BIA thus lacked substantial evidence to deny him asylum.

Shortly after Zhuravlev left Russia, the Russian Supreme Court allowed the Russian Government to "designate the 'international LGBT[Q] public movement' as an extremist organization." This has steadily led to a clampdown on LGBTQ rights across Russia. For example, Russian law enforcement has "raided gay clubs and bars across Moscow" in the aftermath of the ruling. And the broad sweep of Russia's "anti-propaganda law" could "allow the authorities to go after anyone for any activities remotely related to LGBT[Q] rights." The record even contains evidence that Russia has tried to create a database of LGBTQ people. Some argue that these steps could lead to mass monitoring and prosecution of people like Zhuravlev. Arbitrary arrests under the propaganda law have already taken place.

"While we do not require that the BIA address evidentiary minutiae or write any lengthy exegesis, its decision must reflect meaningful consideration of the relevant substantial evidence supporting the alien's claims." *Abdel-Masieh*, 73 F.3d at 585 (citation modified). Here, the IJ simply dismissed the evidence without mentioning it and cursorily concluded that Zhuravlev failed to demonstrate that he would be persecuted. It supported this conclusion simply by stating that "'[r]eports of' and 'concerns about'

instances of persecution do not substitute for evidence." And the BIA's analysis of *future* persecution relied exclusively on *past* events while simply dismissing the evidence discussed above as "anecdotal." And the majority compounds this error by again failing to explicitly mention much of this evidence.

The BIA is not required to discuss the significance of every piece of evidence. On remand, the BIA could again rule against Zhuravlev. But to ignore such a concerning collapse of human rights in Russia without comment reflects a lack of meaningful consideration of Zhuravlev's arguments.

I respectfully dissent.